**Nancy J. DILLE, et al., Plaintiffs,**

v.

**COUNCIL OF ENERGY RESOURCE TRIBES, Defendant.**

**Civ. A. No. 84–C–884.**

United States District Court, D. Colorado.

May 30, 1985.

Terry Tomsick, Denver, Colo., William E. Benjamin, Boulder, Colo., for plaintiffs.

Harris Sherman/Laurie Bennett, Denver, Colo., for defendant.

**ORDER**

CARRIGAN, District Judge.

Plaintiffs sued the Council of Energy Resource Tribes (CERT) alleging sex discrimination in employment in violation of 42 U.S.C. §§ 2000e *et seq.* CERT discharged the plaintiffs, all Caucasian women, and replaced them with Caucasian men. Defendant has filed a motion to dismiss arguing that it is exempt from Title VII because of its status as an Indian tribal organization. Plaintiffs have responded asserting that CERT is not a "tribe" within the meaning of the express Title VII exception covering Indian tribes. The parties have briefed the issues thoroughly and oral argument would not assist in resolving them. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1334.

Title VII defines covered employers as follows:

"The term 'employer' means a person engaged in an industry affecting commerce ... but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, *an Indian tribe,* or any department or agency of the District of Columbia subject by statute to procedures of the competitive service...." 42 U.S.C. § 2000e(b) (emphasis added)

Senator Mundt, sponsor of the provision exempting Indian tribes, thus articulated the intent of the exemption:

"To a large extent many tribes control and operate their own affairs, even to the extent of having their own elected officials, courts, and police forces. This amendment would provide to American Indian tribes in their capacity as a political entity, the same privileges accorded to the U.S. Government and its political subdivisions, to conduct their own affairs and economic activities without consideration of the provisions of the bill."

"Let me emphasize that Indian tribes in an effort to decrease unemployment and in order to integrate their people into the affairs of the national community, operate many economic enterprises, which are more or less supervised by the Indian tribes, the employees serving as apprentices in many instances, and as supervisors and regularly employed and paid employees in others." 110 Cong. Rec. 13,702 (1964).

Thus, tribes are exempt from Title VII's prohibition on employment discrimination for two reasons. *First,* the exemption recognizes that, at least for some purposes, Indian tribes are sovereign entities. *See also* 25 U.S.C. §§ 461–479 (1982) (Indian Reorganization Act); *United States v. Wheeler,* 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); *Worchester v. Georgia,* 31 U.S. (6 Pet.) 515, 8 L.Ed.2d 483 (1832). *Second,* the exemption recognizes that In-

dian tribes control certain aspects of their economic development, including the employment decisions that for many other employers are subject to Title VII. *Cf.* 42 U.S.C. § 2000e–2(i) (1982) (no Title VII violation by employers who pursue publicly announced Indian preference in employment on or near Indian reservations); *Morton v. Mancari,* 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974); *Livingston v. Ewing,* 601 F.2d 1110, 1113 (10th Cir.1979).

Indian tribes, like other forms of government, exercise some of their sovereign powers through delegation to various agencies. While tribal agencies are exempt from Title VII, presumably independent contractors performing non-government services for tribes are not exempt.

The issue here presented is whether CERT is an exempt tribal agency or an independent contractor that must comply with Title VII.[1] It is sometimes difficult to distinguish between a sovereign agency and an independent government contractor. Notably, § 2000e(b) exempts the United States and corporations wholly owned by the United States.

CERT is organized as a nonprofit corporation that only Indian tribes may join. (Defendant's Ex. C) Its current membership consists of thirty-nine Title VII exempt tribes. (Defendant's Ex. D) Each tribal member sends its representative to regular CERT meetings. These representatives must be the "Tribal Chairman, Tribal Governor, or Chief Executive Officer of the member unless some other individual is designated by the member and such designation is communicated in writing by said member to the Chairman of the Board." (Defendant's Ex. E, B–3) CERT's board of directors, which consists of the group of member representatives, manages the organization. In short, CERT is organized as

---

1. The plaintiffs urge a narrow construction of the statutory exemption based on definitions of a "tribe" from other contexts. *See* EEOC Decisions 1983 (CCH) para. 6822 (August 5, 1980). Unrelated definitions of a "tribe" do not govern here because they were formulated with very

different ends in mind. To interpret § 2000e(b) accurately, a "tribe" must be defined in light of the purposes behind the statutory exemption. Plaintiffs' limited view does not seem to include tribal agencies within its definition of a "tribe."

an Indian "League of Nations" or Congress.

CERT is accountable to individual tribes and their members through the tribes' representatives on its board of directors. Exempt tribes totally comprise CERT; they control CERT's operations directly, by voting at regular meetings, and indirectly by electing corporate managing officers from among representatives chosen by CERT's member tribes. Thus, CERT is both directly politically accountable to the people for whose benefit it operates and controlled by established tribal sovereigns.

CERT's first stated purpose is to "provide an organization for the establishment, coordination and/or operation of facilities, services and technical assistance to protect ... and provide prudent management of the members' *tribal* energy resources...." (Emphasis added) Its second purpose is to "improve the general welfare of Indian peoples through educational, charitable and energy related activities." (Defendant's ex. C, A–2, Art. III (1)).

By "improving the general welfare of Indian peoples," CERT serves a traditional sovereign function. *Cf.* United States Constitution, preamble. Moreover, prudent development of tribal energy resources has become vital to the preservation of Indian sovereignty.

All too often in the past, unscrupulous developers have preyed on Indian tribes that lacked the technical sophistication and legal expertise needed to protect their rights. Unfortunately, even the United States government has sometimes spoken with a forked tongue, honoring its agreements with Indian tribes, only so long as they were economically convenient. A scarred history of broken promises, deceitful deals and violent slaughter has robbed those who once occupied most of this continent of all but some relatively small and typically desolate parcels of land. Some tribes have decided that control over the valuable energy resources beneath this remaining land represents a vital component of Indian self-government. A single tribe, backed into an impoverished corner, lacks the bargaining power essential to deal fairly with enormous multinational energy developers. By banding together to create their own sources of technical and legal expertise, Indian tribes can protect their resources. CERT constitutes an attempt to make that protection possible.

Because CERT is directly accountable to established tribal authorities that control its operations, and it performs traditional and vital functions on behalf of its tribal members, I find and conclude that CERT is a tribal agency exempt from Title VII. Plaintiffs' sex-discrimination claims must be dismissed. In addition, because the federal claims are dismissed, I decline to accept jurisdiction over the pendent state-law claims.

Accordingly,

IT IS ORDERED that the defendant's motion to dismiss all the plaintiffs' claims is granted; the complaint and action are dismissed.