UNITED NUCLEAR CORPORATION,
Plaintiff,

v.

William CLARK, et al., Defendants.

Civ. A. No. 81–1537.

United States District Court,
District of Columbia.

Jan. 31, 1984.

Peter J. Nickles, Covington & Burling, Washington, D.C., G. Stanley Crout, C. Mott Woolley, Stephenson, Carpenter, Crout & Olmsted, Santa Fe, N.M., for plaintiff.

Larry Martin Corcoran, U.S. Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendant William Clark.

Richard B. Sobol, Steven B. Liss, Abourezk, Sobol & Trister, Washington, D.C., George P. Vlassis, Gary Verberg, Vlass & Ott, Phoenix, Ariz., for Navajo defendants.

## MEMORANDUM

HAROLD H. GREENE, District Judge.

In this action, United Nuclear Corporation (UNC) seeks a declaratory judgment that the Secretary of the Interior was in error when he required approval by the Navajo Tribe of a mining plan for uranium mines on Indian land. In 1971, with the approval of the Secretary under 25 U.S.C. § 392, UNC had secured leases from the Tribe for the exploration and mining of uranium on certain tribal lands. When UNC discovered mineable resources, it proposed a mining plan under 25 C.F.R.

§ 177.7 which the Secretary refused to approve because the leases had since expired and had not been extended by the Navajo Tribe. This suit against the Secretary followed.

On the government's motion to dismiss, the Court held that approval from the Tribe was necessary to an extension of leases, and that, since the Tribe had not given its consent, the action was subject to dismissal. Nevertheless, the Court denied the government's motion; it allowed UNC to join the Navajo Tribe in the lawsuit; and it stated that the action would be dismissed only if it subsequently turned out that the Tribe was protected by sovereign immunity and thus could not be forced to extend the leases. UNC thereafter brought in the Tribe and four of its officials, and these defendants have now moved to dismiss on grounds of sovereign immunity, lack of personal jurisdiction, and improper venue. Since the sovereign immunity defense is dispositive, only it needs to be discussed.

I

Many, if not most of UNC's contentions are directly foreclosed by the decision of the Supreme Court in *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). That case was an action filed by a female member of the Santa Clara Pueblo Tribe seeking relief against the enforcement of a tribal ordinance denying membership in the tribe to children of female members who marry outside the tribe while extending membership to children of male members to marry outside the tribe. Notwithstanding the compelling nature of the claim and the Court of Appeals' conclusion that this classification was presumptively invidious and therefore sustainable only if justified by a compelling tribal interest, the Supreme Court reversed. Among the Court's holdings (or restatements of prior holdings) of substantial ap-

plicability to this case are the following: Indian tribes are distinct independent political communities, retaining their original natural rights in matters of local self-government; as separate sovereigns pre-existing the Constitution, tribes are unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority, such as the Fifth Amendment and other provisions of the Bill of Rights;[1] Congress has plenary authority to limit, modify, or eliminate the powers of local self-government which the tribes otherwise possess; tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers; although Congress has power to authorize civil actions against tribal officers, a proper respect both for tribal sovereignty and the plenary authority of Congress in this area cautions that the federal courts tread lightly in the absence of clear indications of legislative intent; and, unless and until Congress makes clear its intention to authorize civil actions for violations of the Indian Civil Rights Act,[2] the courts are constrained to find that this statute does not impliedly authorize such actions against either a tribe or its officers.

It is thus a basic principle that Indian tribes are immune from suit in the courts of the United States. *Santa Clara Pueblo v. Martinez, supra; Puyallup Tribe, Inc. v. Department of Game*, 433 U.S. 165, 172–73, 97 S.Ct. 2616, 2621, 53 L.Ed.2d 667 (1977); *United States v. Fidelity & Guarantee Co.*, 309 U.S. 506, 509, 60 S.Ct. 653, 655, 84 L.Ed. 894 (1940). Any waiver of that immunity cannot be implied but must be unequivocally expressed. *Santa Clara Pueblo v. Martinez, supra*, 436 U.S. at 58, 98 S.Ct. at 1677; *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976); *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969). It is likewise

---

1. The immunity of the Indian Tribes from suit does not derive from the U.S. Constitution but from the Indians' position as once-independent nations with inherent powers of a limited sovereignty which has never been extinguished.

*United States v. Wheeler*, 435 U.S. 313, 322, 98 S.Ct. 1079, 1085, 55 L.Ed.2d 303 (1978).

2. Indian Civil Rights Act of 1968, 25 U.S.C. §§ 1301, 1302.

clear that an Indian tribe may not be sued indirectly by making the Tribal representatives the nominal defendants. *Bottomly v. Passamaquoddy Tribe,* 599 F.2d 1061, 1067 (1st Cir.1979); *State of Wisconsin v. Baker,* 464 F.Supp. 1377, 1380 (W.D.Wis.1978).

UNC does not seriously quarrel with these principles. Instead, it maintains that the sovereign immunity of Indian tribes does not extend to commercial activities, that sovereign immunity does not bar actions which seek redress for the deprivation of property without due process or just compensation, and that the Navajo tribal officials may be sued in the circumstances presented by this case under the Indian Civil Rights Act.

II

No court appears to have ever recognized a commercial activity exception to Indian sovereign immunity, and if the court were to accept UNC's argument it would therefore have to break new ground. It thus becomes necessary to examine the reasoning underlying UNC's position.

At least with respect to foreign nations, the federal courts have by and large declined to recognize immunity with respect to suits involving the sovereign's non-public, non-political activities. See, *e.g., Petrol Shipping Corp. v. Kingdom of Greece,* 360 F.2d 103, 110 (2d Cir.1966); *Amkor Corp. v. Bank of Korea,* 298 F.Supp. 143, 144 (S.D.N.Y.1969). See also, Note, *Sovereign Immunity of States Engaged in Commercial Activities,* 65 Colum.L.Rev. 1086 (1965); Lauterpacht, *The Problem of Jurisdictional Immunity of Foreign Sovereigns,* 28 Brit.Y.B. Int'l L. 220 (1951). It may well be that, by analogy and by the logic of the precedents and authorities, a similar rule should apply to the Indian tribes. It is unnecessary to resolve that question, however, for although the Court is prepared to assume for purposes of the

issues before it on the present motion that the principle of sovereign immunity is not a defense to an action against an Indian Tribe for purely commercial activities, it is still constrained to hold that UNC cannot prevail.

The commercial activity exception to sovereign immunity is enshrined in the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605(a)(2), and it may be regarded for present purposes to be as broad as specified in that statute. The District Court for the Central District of California had occasion not long ago to consider that Act in relation to the price-fixing activities of the OPEC nations, and it concluded that the commercial exception did not apply to the lease of mineral rights on government-owned land. *IAM v. OPEC,* 477 F.Supp. 553 (C.D.Cal.1979), *aff'd,* 649 F.2d 1354 (9th Cir.1981). Said the court:

In determining whether the activities of the OPEC members are governmental or commercial in nature, the Court can and should examine the standards recognized under international law. The United Nations with the concurrence of the United States, has repeatedly recognized the principle that a sovereign state has the sole power to control its natural resources.... The United States' enforcement of this principle deprives from its control, as a sovereign, of the development of its own lands and resources. See, *e.g.,* U.S. Constitution, Art. 4, Sec. 3, Cl. 2.

The control over a nation's natural resources stems from the nature of sovereignty. By necessity and by traditional recognition, each nation is its own master in respect to its physical attributes. The [OPEC members'] control over their oil resources is an especially sovereign function because oil, their primary, if not sole, revenue-producing resource, is crucial to the welfare of their nations' people.....[3]

**3.** 477 F.Supp. at 567–68. As noted above, the decision of the District Court was affirmed on other grounds. However, the Court of Appeals, holding that the action was barred by the act of state doctrine, noted that this doctrine does not extend to commercial activity, thus implying by its agreement with the District Court rationale on that point. See *IAM v. OPEC, supra,* 649 F.2d at 1360 n. 8.

The rationale underlying these principles is directly pertinent here. There is an obvious difference between commercial activity as such and the leasing of land for the exploration and mining of non-renewable, irreplaceable mineral resources. UNC had leases on Navajo tribal lands. These leases expired by their own terms, and the thrust of the UNC suit is to require the tribe to extend those leases for an extended period so that the minerals may be extracted. That is not mere commercial activity; it goes to the core of the tribe's patrimony.[4]

■ Even if the Court were to be justified, therefore, in holding, absent prior precedent, that the broad sovereign immunity enjoyed by the Indian tribes is limited to noncommercial activities, it would not be justified in rejecting at the same time the mineral rights exception to the commercial activities principle. To put it another way, even if there is a commercial activities exception to the immunity enjoyed by the Navajo Tribe, the exception does not extend to the control of its natural resources; i.e., to the leasing of its land for mineral exploration and mining.

### III

■ UNC's due process and lack of just compensation arguments are likewise met by insuperable obstacles. In the first place, as noted above, it is clearly established that the Indian tribes are not bound by the proscriptions of the Fifth Amendment. *Santa Clara Pueblo v. Martinez, supra,* 436 U.S. at 56, 98 S.Ct. at 1675. UNC's "natural rights and fundamental justice" argument (Opposition at 19 n. 1)

cannot overcome that basic rule,[5] as the few decisions it cites make abundantly clear. These decisions involved special federal interests, such as that in the regulation of nuclear energy (*UNC Resources, Inc. v. Benally,* 518 F.Supp. 1046 (D.Ariz. 1981)) or they restate the familiar principle that fundamental rights are available in the territories (*Dorr v. United States,* 195 U.S. 138, 148, 24 S.Ct. 808, 812, 49 L.Ed. 128 (1904)); they have nothing to do with the issue before the Court in this case.

Moreover, UNC's due process argument establishes at most that the Navajo Tribe must provide it with *some remedy* for the claimed violation, not that there must be a remedy in a federal district court. The Navajo Nation Sovereign Immunity Act, enacted by the Navajo Tribal Council on May 6, 1980, provides in section 3 that

any officer, employee or agent of the Navajo Nation may be sued in the Courts of the Navajo Nation to compel him/her to perform his/her responsibility under the laws of the United States and the Navajo Nation.

Under that Act, UNC has a right to sue the individual Navajo defendants in Tribal Court and there assert its claim that it has a right to an extension of the lease.[6] It may be noted that this kind of an action against the individuals, as distinguished from the sovereign entity, is precisely what UNC is arguing for through its reliance on such cases as *Florida Department of State v. Treasure Salvors, Inc.,* 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) and *United States v. Lee,* 106 U.S. (16 Otto) 196, 222, 1 S.Ct. 240, 262, 27 L.Ed. 171 (1882).

---

**4.** Just as oil is crucial to the welfare of the OPEC nations, so oil and minerals are the sole significant revenue-producing assets of many Indian tribes. According to the most recently compiled government statistics, Indian lands earned over $258 million from subsurface leases and permits in the fiscal year ending September 30, 1981. Navajo lands alone earned over $50 million. United States Department of the Interior, Annual Report of Indian Lands and Income from Surface and Subsurface Leases (1981). See generally, Berger, Indian Mineral Interest—A Potential for Economic Advancement, 10 Ariz.L.Rev. 675 (1968).

**5.** It is, of course, not unusual for a citizen to be defeated in his claims against the government of the United States, however much he may complain about the antiquated nature of the defense of sovereign immunity and its inconsistency with principles of "fundamental justice."

**6.** If UNC succeeded in such an equitable action, it could then proceed in federal court against the Secretary of the Interior for an order requiring approval of the lease and the mining plan.

UNC's only reply to the Navajo's argument based on the availability of the Tribal Court is that the Council of the Navajo Tribe has the authority to overturn decisions of that court, and that such a scheme does not comport with traditional notions of judicial independence and fairness. If the ability of executive or legislative authority to overrule a court were the touchstone of fair justice, few judicial systems outside the United States could pass muster. In such nations as the Soviet Union the political authorities are clearly supreme, and even in Great Britain Parliament retains the ultimate authority to overrule the courts. The Court cannot accept the proposition that UNC need not even go before the Tribal Court because of the possibility of a reversal of that court's decision by the Tribal Council.[7]

UNC relies on the recent decision of the Court of Appeals for the Seventh Circuit in *Wisconsin v. Baker*, 698 F.2d 1323 (7th Cir.), *cert. denied*, — U.S. —, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983), which, according to UNC, "strongly suggest[s]" that sovereign immunity does not apply when Tribal officials are alleged to have violated the United States Constitution. Memorandum of Supplemental Authorities at 3. But the focus of the *Baker* opinion was not on constitutional rights or violations but on the inability of tribal officials to exercise authority that the tribe was powerless to convey to them. The court said, not surprisingly, that when a tribal official exercises on behalf of a tribe authority which the tribe does not possess, he is not immune from suit. This Court finds no statement in *Baker*, or even any suggestion, that would be in the least helpful to UNC.[8]

## IV

UNC's reliance on the Indian Rights Act may be disposed of summarily. UNC argues that this Act provides a federal forum for its claims because these claims involve "particularly egregious allegations of personal restraint and deprivations of personal rights...." Opposition at 25. Aside from the fact that UNC's claims against the Navajo tribe cannot, by any stretch of the imagination be fitted into the category into which UNC would place them,[9] *Santa Clara Pueblo v. Martinez, supra,* has undermined any claim of displacement of sovereign immunity by the Act other than with respect to habeas corpus. See *Ramey Construction Co. v. Apache Tribe of Mescalero Reservation,* 673 F.2d 315, 319 (10th Cir.1982). Moreover, UNC is not even among the class for whose benefit the statute was enacted. See *Santa Clara Pueblo v. Martinez, supra; Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

For these reasons, the Court concludes that UNC cannot defeat the Navajo's sovereign immunity rights by reliance on a commercial exception, due process or compensation principles, or the Indian Rights Act. The motion to dismiss of the Navajo Tribe will be granted, and so will the motion to dismiss of the Secretary of the Interior.

---

**7.** It is neither necessary nor appropriate to speculate whether UNC would have a remedy in federal court if it turned out that, because of the Council's supreme authority or for other reasons, consideration of its claims by the Tribal authorities was totally inadequate.

**8.** As concerns *Rainbow Resources, Inc. v. Calf Looking,* 521 F.Supp. 682 (D.Mont.1981), another recent decision relied on by UNC, it held only—on a rationale similar to that employed in *Baker*—that tribal officials may be sued when they violate regulations of the Secretary of the

Interior. That principle, too, has no application here: no Interior regulations have been violated.

**9.** Compare *Dry Creek Lodge, Inc. v. Arapahoe and Shoshone Tribes,* 623 F.2d 682 (10th Cir. 1980) where a tribe closed the only access road to a guest lodge, stranding the persons on the lodge property without any possibility of exit, and where the tribal court refused to hear the lodge owners.