Nancy J. DILLE, et al.,
Plaintiffs-Appellants,

v.

COUNCIL OF ENERGY RESOURCE TRIBES, Defendant-Appellee.

No. 85–1939.

United States Court of Appeals, Tenth Circuit.

Sept. 19, 1986.

Richard Scheidenhelm, American Civil Liberties Union of Colorado, Boulder, Colo., for plaintiffs-appellants.

James J. Sandman of Arnold and Porter, Denver, Colo. (Harris D. Sherman and Thomas M.J. Kerwin of Arnold and Porter, Denver, Colo., with him on the briefs), for defendant-appellee.

Before BARRETT, ANDERSON, and TACHA, Circuit Judges.

TACHA, Circuit Judge.

This is an appeal from a decision of the district court dismissing the sex discrimination charges brought by five female plaintiffs against their former employer, the Council of Energy Resource Tribes (CERT).[1] The sole issue presented on appeal is whether CERT is entitled to the Indian tribe exemption provided by § 701(b) of Title VII of the Civil Rights Act of 1964. We affirm the decision of the district court.

CERT is a council comprised of thirty-nine Indian tribes that have joined together to manage collectively their energy resources. Membership in CERT is limited to Tribal entities who own or control energy resources. The business of the council is conducted by the representatives of the member tribes. The board of directors of CERT is composed of the designated representatives of each tribe. The officers of CERT are selected from among the board of directors. The member tribes, then, have exclusive control over the operations of CERT. As the district court aptly described, "In short, CERT is organized as an Indian 'League of Nations' or Congress." 610 F.Supp. at 158–59.

The plaintiffs were employees in the Denver office of CERT. Their employment was terminated on August 31, 1983. The plaintiffs then filed suit against CERT alleging that their employment had been terminated on the basis of their sex and that CERT had maintained sex segregated job classifications in violation of Title VII. CERT responded that its activities were not governed by Title VII because Indian tribes were expressly exempted from the statutory definition of "employer" in Title VII.

## I.

The section of the statute that we must construe is straightforward:

The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the government of the United States, *an Indian tribe*, or any department or agency of the District of Columbia subject by statute to procedures of competitive service....

42 U.S.C. § 2000e(b) (emphasis added). Clearly this language exempts a single Indian tribe from the definition of "employer" and therefore from the legal requirements of Title VII. We must now consider whether Congress intended the exemption in § 701(b) to apply to an organization comprised of many Indian tribes. We do so

---

1. The decision of the district court is reported in *Dille v. Council of Energy Resource Tribes*, 610 F.Supp. 157 (D.Colo.1985).

recognizing that "it is a settled principle of statutory construction that statutes passed for the benefit of dependent Indian tribes are to be liberally construed, with doubtful expressions being resolved in favor of the Indians." *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.*, 467 U.S. 138, 149, 104 S.Ct. 2267, 2275, 81 L.Ed.2d 113 (1984).

Senator Mundt of South Dakota introduced the amendment exempting Indian tribes from the definition of employer in Title VII. He explained its purpose as follows:

This amendment would provide to American Indian tribes in their capacity as a political entity, the same privileges accorded to the U.S. Government and its political subdivisions, to conduct their own affairs and economic activities without consideration of the provisions of the bill.

Let me emphasize that Indian tribes in an effort to decrease unemployment and in order to integrate their people into the affairs of the national community, operate many economic enterprises, which are more or less supervised by the Indian tribes, the employees serving as apprentices in many instances, and as supervisors and regularly employed and paid employees in others.

110 Cong.Rec. 13702 (1964). Senator Mundt's comments show that the purpose of this exemption was to promote the ability of sovereign Indian tribes to control their own economic enterprises. We observe that many decisions of this court and other courts throughout the country attest to the critical importance of natural resources to the Indian tribes which hold the rights to these resources. *United Nuclear Corp. v. Clark*, 584 F.Supp. 107, 110 n. 4 (D.D.C.1984); *see also Crow Tribe of Indians v. Montana*, 650 F.2d 1104 (9th Cir. 1981), *modified*, 665 F.2d 1390, *cert. denied*, 459 U.S. 916, 103 S.Ct. 230, 74 L.Ed.2d 182 (1982); *Merrion v. Jicarilla Apache Tribe*, 617 F.2d 537 (10th Cir.1980) (en banc), *aff'd*, 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982).

The purposes of CERT mirror the purposes of the exemption for Indian tribes in § 701(b). In the time-honored fashion of governments seeking to address sovereign concerns, CERT was organized to assist member tribes in obtaining the greatest possible benefits from one of the few inherently valuable economic assets they possess—energy resources. The purposes of CERT as set forth in its articles of incorporation are, *inter alia:*

1. To provide an organization for the establishment, coordination and/or operation of facilities, services, and technical assistance to protect, preserve, conserve and provide for the prudent management of the members' tribal energy resources ... through and with the assistance of Federal, State, local or private agencies, tribal units, and other entities and individuals by providing technical assistance and expertise, information, and policy assessment services.

2. To improve the general welfare of Indian people through educational, charitable and energy-related activities.

The creation of CERT to advance the economic conditions of its thirty-nine member tribes is precisely the type of activity that Congress sought to encourage by exempting Indian tribes from the requirements of Title VII. The legislative history indicates that Congress intended to allow Indian tribes to further their economic interests through a variety of forms. The district court here observed that a collective effort to manage tribal resources was necessary because the actions of an individual tribe were unlikely to succeed:

All too often in the past, unscrupulous developers have preyed on Indian tribes that lacked the technical sophistication and legal expertise needed to protect their rights .... A single tribe, backed into an impoverished corner, lacks the bargaining power essential to deal fairly with enormous multinational energy developers. By banding together to create their own sources of technical and legal expertise, Indian tribes can protect their

resources. CERT constitutes an attempt to make that protection possible. 610 F.Supp. at 159. *See generally* Note, *Indian Tribes: Self-Determination Through Effective Management of Natural Resources,* 17 Tulsa L.J. 507, 521–530 (1982) (discussing the role CERT has played in assisting the development of energy resources on Indian lands). Congress certainly could not have intended to withdraw the exemption anytime a group of Indian tribes coalesce for a common purpose related to economic development. Because the council is entirely comprised of the member tribes and the decisions of the council are made by the designated representatives of those tribes, CERT falls directly within the scope of the Indian tribe exemption that Congress included in Title VII.

The plaintiffs read the language and purpose of the Indian tribe exemption in § 701(b) differently. First, they argue that the language of § 703(i) requires that § 701(b) be read to deny an exemption to CERT. Second, they rely on definitions of Indian tribes in other contexts to suggest a different result in this case. We believe that they have misconstrued the statutory language and the nature of CERT in both instances.

Section 703(i) of Title VII provides:

**Businesses or enterprises extending preferential treatment to Indians**

(i) Nothing contained in this subchapter shall apply to any business or enterprise on or near an Indian reservation with respect to any publicly announced employment practice of such business or enterprise under which a preferential treatment is given to any individual because he is an Indian living on or near a reservation.

42 U.S.C. § 2000e–2(i). Sections 703(i) and 701(b) both grant Indians special treatment, but they serve different and complementary purposes. Section 703(i) offers encouragement to businesses near Indian reservations to grant preferential hiring treatment to Indian workers. Section 701(b) completely exempts the activities of Indian tribes from the requirements of Title VII. The plaintiffs argue that CERT is a business entity, not an Indian tribe. They further argue that CERT does not meet the requirements of the § 703(i) exemption for businesses near Indian reservations. CERT, however, is more than a business or enterprise that Congress wanted to protect through § 703(i). CERT is itself a group of Indian tribes. As we have discussed, we do not believe that Congress intended to protect individual Indian tribes but not collective efforts by Indian tribes. Section 703(i) does not affect the status of CERT as an Indian tribe within the meaning of § 701(b).

Plaintiffs would have us rely on definitions of Indian tribes taken from other contexts. But the definition of an Indian tribe changes depending upon the purpose of the regulation or statutory provision under consideration. *Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 582 n. 4 (1st Cir.), *cert. denied,* 444 U.S. 866, 100 S.Ct. 138, 62 L.Ed.2d 90 (1979). Accordingly, we are constrained to stay within the statutory language and purpose of the exemption involved in this case.[2]

## II.

The plaintiffs argue on appeal that CERT cannot claim the Indian tribe exemption because it consented to suit in its arti-

---

**2.** The EEOC has interpreted the Indian tribe exemption to mean that a non-profit corporation seeking to promote the economic development of Indian people is not exempt from the requirements of Title VII. EEOC Decision No. 80–14 (1980), EEOC Decisions 1983 (CCH) ¶ 6823. We believe that the appropriate EEOC decision regarding the status of a group of sovereign Indian tribes is EEOC Decision No. 71–405 (1970), EEOC Decisions 1973 (CCH) ¶ 6182 (holding that a multistate educational agency created and controlled by eight states was entitled to the then existing exemption from Title VII for states). To the extent that the first decision supports a result contrary to that which we reach here, we note that a contrary EEOC " 'interpretation' of the statute cannot supersede the language chosen by Congress." *Mohasco Corp. v. Silver,* 447 U.S. 807, 825, 100 S.Ct. 2486, 2496, 65 L.Ed.2d 532 (1980) (citation omitted).

cles of incorporation. This argument was not raised before the district court, so we decline to consider it here. *See Neu v. Grant,* 548 F.2d 281, 287 (10th Cir.1977).

The judgment of the district court is AFFIRMED.