Stephen J. GIEDOSH, Deborah M. Giedosh, George H. McGrath, and Marietta R. Cady, Plaintiffs,

v.

LITTLE WOUND SCHOOL BOARD, INC., Defendant.

No. CIV. 96–5115.

United States District Court, D. South Dakota, Western Division.

Dec. 18, 1997.

Michael M. Hickey, Bangs, McCullen, Butler, Foye & Simmons, Rapid City, SD, for Plaintiffs.

Charles Thomas Abourezk, Abourezk Law Offices, Rapid City, SD, for Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

BATTEY, Chief Judge.

### I. PROCEDURAL HISTORY

[¶ 1] Plaintiffs allege that defendant Little Wound School Board ("the Board") has violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* Plaintiffs maintain that the Board has violated Title VII because it has a pattern and a practice of discriminating against employees based upon race. All plaintiffs allege that their employment at Little Wound School ("school") was terminated based upon race.

Pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, plaintiff George McGrath also alleges that his employment was terminated because of discrimination based upon a disability. Plaintiffs have also filed state claims, breach of contract and intentional infliction of emotional distress, based upon supplemental jurisdiction. Plaintiffs allege that this Court has jurisdiction to proceed under section 706 of Title VII, 42 U.S.C. § 2000e–5.

[¶ 2] On July 29, 1997, this Court issued an order converting the Board's motion to dismiss to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Despite the fact that this Court found that the Board's motion to dismiss created a factual attack as to whether this Court had jurisdiction, this Court held that it could not grant the Board's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Several courts have held that in Title VII cases a dismissal pursuant to Rule 12(b)(1) was not appropriate because the factual findings regarding subject matter jurisdiction were intertwined with the merits. This Court agreed with those courts and concluded that it could not grant the Board's motion to dismiss pursuant to Rule 12(b)(1) because any factual findings which the Court would make would be intertwined with the merits.

[¶ 3] Based upon this conclusion, this Court held that the issue would be more appropriately resolved as a Rule 12(b)(6) motion for failure to state a claim. However, the Court found that on the face of the pleadings it would not be able to find that plaintiffs had failed to state a claim and chose to convert the Board's motion to a motion for summary judgment. Accordingly, although rare, the issue for resolution by this Court on defendant's motion for summary judgment is whether this Court as a matter of law has subject matter jurisdiction in the above-entitled cause of action.

### II. SUMMARY JUDGMENT STANDARD

[¶ 4] Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant can

"show that there is no genuine issue as to any material fact and that [the movant] is entitled to judgment as a matter of law ." In determining whether summary judgment should issue, the facts and inferences from those facts are viewed in the light most favorable to the nonmoving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.

[¶ 5] The Supreme Court has instructed that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986).

[¶ 6] In determining whether a genuine issue of material fact exists, the Court views the evidence presented based upon which party has the burden of proof under the underlying substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The non-moving party "must do more than show that there is some metaphysical doubt as to the material facts," and "[w]here the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 106 S.Ct. at 1356.

[¶ 7] Even though Fed.R.Civ.P. 56(b) specifically permits a defendant to "at any time, move with or without supporting affidavits

for a summary judgment in the party's favor as to all or any part thereof," in most cases federal courts await the development of facts through the discovery process before considering the merits of summary judgment motions. *See generally* Fed.R.Civ.P. 56(f). However, the posture of this case is unique in the sense that all the facts necessary for resolution of the issue raised by the Board's motion for summary judgment have been developed and set forth in the record. Hence, further discovery on the issues raised by the Board's motion would vexatiously delay the inevitable conclusion that there is no genuine issue as to any material fact and that the Board is entitled to judgment as a matter of law.

### III. FACTS

[¶ 8] Plaintiffs are white former employees of the Board. The Little Wound School ("school") is located in Kyle, South Dakota, within the boundaries of the Pine Ridge Indian Reservation. The Board is a nonprofit corporation incorporated under the laws of South Dakota.[1]

[¶ 9] Plaintiff Steven Giedosh ("Mr.Giedosh") was the former Superintendent of Little Wound School. First Affidavit of Anne Hunter[2] at ¶ 5. Mr. Giedosh was terminated on or about January 17, 1997. *Id.* Following his termination, Linda Hunter, an American Indian female, was hired as acting superintendent and later was hired as the permanent superintendent. *Id.* Plaintiff Deborah Giedosh ("Ms.Giedosh") was the school nurse of Little Wound School until she was terminated on or about February of 1996. *Id.* at ¶ 6. Jack Two Crow, an American Indian male, replaced Ms. Giedosh. *Id.* Plaintiff Marietta Cady ("Cady") was the special education teacher at Little Wound School. *Id.* at ¶ 7. Cady had a one-year contract with the school and the Board chose not to renew her contract at the end of the 1995–96 school year. *Id.* The following year her position

---

1. The Board incorporated so that it could obtain 501(c)(3) tax exempt status from the Internal Revenue Service. Affidavit o f Tom Allen at ¶ 3. This status was necessary for the Board to qualify for private funding from foundations and individuals who sought tax benefits as a result of their contributions. *Id.* Tom Allen was a member of the Little Wound School Board from 1972

to 1976. From 1976 to 1977, he was the Community Education Director for the school, and from 1977 to 1980, he was the Executive Director of the school.

2. Anne Hunter is employed as the Little Wound School's Personnel Director.

was filled by a white male. *Id.* Plaintiff George McGrath, who held the assistant superintendent position at the school, suffered from a heart attack and was required to have bypass surgery. *Id.* at ¶ 8. McGrath was to refrain from working following the surgery and never returned to work at the school. *Id.* No one was hired to replace McGrath; instead the money was used to meet other needs.[3] *Id.* at ¶ 9.

[¶ 10] Plaintiffs object to the references by defendant that the Board is a tribal organization or associated with the Oglala Sioux Tribe ("Tribe") of the Pine Ridge Indian Reservation. *See* Defendant's Statement of Factual Basis ¶¶ 5–9, 11; *compare* Plaintiffs' Response to Defendant's Statement of Material Facts ¶¶ 5–9, 11. Plaintiffs' objections to the Board's statements rely upon the Articles of Incorporation of the Board. However, the fact that the Board chose to incorporate under South Dakota law does not eliminate the Board's connections to the Tribe. Once the Board has established its tribal relations, the burden shifts to plaintiffs to show by evidence other than the complaint that the Board did not have such relations with the Tribe. Plaintiffs have failed to present such evidence. Based upon the evidence presented by both parties, this Court will not conclude that the Articles of Incorporation abolish the relationship between the Board and the Tribe.

[¶ 11] This Court finds that the non-moving parties have failed to meet their burden in providing evidence which creates a genuine issue of material fact as to the issues surrounding the Board's relationship with the Tribe. Accordingly, this Court finds that there are no genuine issues of material fact as to the following facts which relate to the Board's relationship with the Tribe. This Court finds that the school was formed with the consent and authorization of the Tribe. Affidavit of Randy Plume[4] at ¶ 6. The Board is a democratically-elected Board, and the Board's membership is comprised solely of members of the Oglala Sioux Tribe. Affidavit of Allen at ¶ 4. The school is a tribally chartered entity. Affidavit of Plume at ¶ 3. The Little Wound School must adhere to the Oglala Sioux Tribal Council's resolutions and ordinances. Affidavit of Allen at ¶ 6; Affidavit of Plume at ¶ 3. The school is directly responsible to the Tribe and the Tribe's education committee. Affidavit of Plume at ¶ 3. To further the Tribe's policy of community participation, the Tribe has allowed the Little Wound School to be operated by a democratically-elected board. Affidavit of Plume at ¶ 4. Given that the school is tribally chartered, the Tribe may step in at any time, for good reason, and assume the control and operation of the school. Affidavit of Plume at ¶ 4.

[¶ 12] Plaintiffs do not dispute that the Tribe authorized the Board to contract with the Bureau of Indian Affairs ("BIA") under the provisions of the Indian Self–Determination Educational Assistance Act ("ISDEAA"), 25 U.S.C. § 450 *et seq.*.

## IV. DISCUSSION

[¶ 13] All plaintiffs have alleged discrimination pursuant to Title VII and one plaintiff, McGrath, has also alleged discrimination pursuant to the ADA. For this Court to have subject matter jurisdiction pursuant to either Title VII or the ADA, the defendant must be defined as an employer or included as a covered entity under the Acts. Both the ADA and Title VII exclude as an employer an "Indian tribe," 42 U.S.C. § 12111(5)(B)(i) and 42 U.S.C. § 2000e(b),[5] respectively, and nei-

---

**3.** Plaintiffs argue that the fact that McGrath's position was eliminated does not prohibit him from arguing that he was discriminated against based upon race. The Court is not required to make a finding as to this issue at this time because the issue at this time is whether this Court would have subject matter jurisdiction even if all plaintiffs were terminated or their employments were ended based upon race.

**4.** Randy Plume is the Education Director for the Tribe.

**5.** 42 U.S.C. § 2000e(b) states:

The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (I) the United States, a corporation wholly owned by the government of the United States, *an Indian tribe*, or any department or agency of the District of Columbia subject by statute to procedures of competitive service....

(Emphasis added). 42 U.S.C. § 12111(5)(B)(i) states:

ther Act defines an "Indian tribe." The Board urges that it is an "Indian tribe" and that this Court does not have subject matter jurisdiction to proceed over this cause of action.

■ [¶ 14] In determining whether the Board is an "Indian tribe," this Court must keep in mind the canons of construction. "[I]t is a settled principle of statutory construction that statutes passed for the benefit of dependent Indian tribes are to be liberally construed, with doubtful expressions being resolved in favor of the Indians." *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.,* 467 U.S. 138, 104 S.Ct. 2267, 2275, 81 L.Ed.2d 113 (1984).

[¶ 15] The Tenth Circuit case of *Dille v. Council of Energy Resource Tribes,* 801 F.2d 373 (10th Cir.1986), faced an issue similar to the issue before this Court. In *Dille,* the issue was whether the "Indian tribe" exemption of Title VII applied to an organization which was comprised of many Indian tribes. *Id.* at 374.

[¶ 16] *Dille* involved a suit, pursuant to Title VII, by five plaintiffs for sex discrimination against their former employer Council of Energy Resource Tribes ("CERT" or "council"). CERT is thirty-nine Indian tribes that have formed a council to collectively manage their energy resources. CERT's business is conducted by representatives of each tribe. The board of directors of CERT is composed of representatives who are designated from each tribe. The officers of the council are selected from the board of directors.

[¶ 17] The *Dille* court first considered the legislative history of the "Indian tribe" exemption to Title VII. The court relied on the following comments made by Senator Mundt of South Dakota when he introduced the

amendment to Title VII which would exempt Indian tribes:

> This amendment would provide to American Indian tribes in their capacity as a political entity, the same privileges accorded to the U.S. Government and its political subdivisions, to conduct their own affairs and economic activities without consideration of the provisions of the bill. Let me emphasize that Indian tribes in an effort to decrease unemployment and in order to integrate their people into the affairs of the national community, operate many economic enterprises, which are more or less supervised by the Indian tribes, the employees serving as apprentices in many instances, and as supervisors and regularly employed and paid employees in others.

*Id.* at 375 (quoting 110 Cong. Rec. 13702 (1964)). According to the court in *Dille,* "Senator Mundt's comments show that the purpose of this exemption was to promote the ability of sovereign Indian tribes to control their own economic enterprises." *Id.* In interpreting Senator Mundt's comments the district court in *Dille* noted:

> Indian tribes, like other forms of government, exercise some of their sovereign powers through delegation to various agencies. While tribal agencies are exempt from Title VII, presumably independent contractors performing non-government services for tribes are not exempt.

*Dille v. Council of Energy Resource Tribes,* 610 F.Supp. 157, 158 (D.Colo.1985).

[¶ 18] The appellate court in *Dille* also looked to the purposes of CERT[6] which were set forth in the articles of incorporation and concluded that the purposes of CERT were similar to the purposes of the "Indian tribe" exemption.

The term "employer" does not include—
(i) the United States, a corporation wholly owned by the government of the United States, or an Indian tribe.

**6.** The following purposes of CERT were set forth in its articles of incorporation:

1. To provide an organization for the establishment, coordination and/or operation of facilities, services, and technical assistance to protect, preserve, conserve and provide

for the prudent management of the members' tribal energy resources ... through and with the assistance of Federal, State, local or private agencies, tribal units, and other entities and individuals by providing technical assistance and expertise, information, and policy assessment services.
2. To improve the general welfare of Indian people through educational, charitable and energy-related activities.

*Dille,* 801 F.2d at 374.

[¶ 19] The plaintiffs in *Dille* argued that CERT was not an "Indian tribe" under Title VII but was a business entity. The court disagreed. The court held that CERT was an "Indian tribe" under Title VII. The court stated, "CERT ... is more than a business or enterprise that Congress wanted to protect ... CERT is itself a group of Indian tribes. As we have discussed, we do not believe that Congress intended to protect individual Indian tribes but not collective efforts by Indian tribes." *Dille*, 801 F.2d at 376. The appellate court in *Dille* upheld the district court's decision dismissing the plaintiffs' lawsuit.

[¶ 20] "[T]he Little Wound School and its School Board is authorized by, organized under the law of, and chartered by the Oglala Sioux Tribe for the purpose of contracting educational services from the federal government pursuant to Public Law 93–638." Affidavit of Cecelia Fire Thunder,[7] Defendant's *Motion for Summary Judgment* Exhibit A. In Resolution No. 76–06 of the Oglala Sioux Tribal Council, the Tribe stated:

[D]istrict School Boards have been established on the Pine Ridge Reservation by authority of Tribal Resolution 70–51 of the Oglala Sioux Tribal Council; and

Whereas, the Oglala Sioux Tribal Council remains firmly of the conviction that the education of Indian children on the Pine Ridge Reservation must be controlled by Indian parents through institutions based on local communities.

*See* Defendant's Motion to Dismiss Exhibit D. The Little Wound Policies and Procedural Manual ("the manual") for the school year of 1996–97 set forth the composition of the Board:

The Organization, composed of members of the Oglala Sioux Tribe who are residents of Medicine Root District, and other areas served by Little Wound School, shall be known hereafter as Little Wound School Board.

*See* Attachment to Affidavit of Fire Thunder. The manual also states:

Little Wound School Board is a democratically elected group of American Indians established by resolution 70–51 of the Oglala Sioux Tribe to provide for direction to

the Native American community it serves within the Pine Ridge Indian Reservation, and particularly within Kyle and the Little Wound School Service area. The Board is a tribally chartered, non-profit entity which provides a variety of educational services primarily to the tribally-enrolled members of the Kyle community and surrounding service area. The Little Wound School Board receives federal government funds under the authority of the Indian Self–Determination and Education Assistance Act, the Tribally Controlled Schools Act of 1988, and other federal statutes. The Little Wound School is not funded by the State of South Dakota. The Little Wound School is a "tribal organization" as that term is defined in 25 U.S.C. § 450b(1).

*Id.*

[¶ 21] Like in *Dille*, the members of the organization, in this case the Board, are made up of members of the Tribe. For good reason, the Oglala Sioux Tribe may even step in and assume the operation of the Little Wound School. Like in *Dille*, the purpose of establishing the organization is to further the development, in this case the educational development, of the children living in Indian country, and to involve the Indian community in the education of the Indian children. In reaching its conclusion that the Board fits within the definition of an "Indian tribe" under Title VII, this Court also takes into account the following factors. First, the Board has contracted with the BIA under the ISDEAA. The Indian Self–Determination and Education Assistance Act emphasizes the importance of parental and community control in the educational process. *See* 25 U.S.C. § 450(b)(3). The school is tribally chartered. The Board was formed with the consent and authorization of the Tribe and is required to comply with tribal regulations and ordinances. The Board is made up of members of the Tribe, and those members are democratically elected. The school, which is operated by the Board, services tribally enrolled members in the Kyle community and the surrounding area of the Pine Ridge Indian Reservation.

7. Cecelia Fire Thunder is the Chairperson of the Little Wound School Board.

[¶ 22] Plaintiffs in this case argue that the holding in *Dille* is factually distinguishable. In *Dille,* the issue before the court was whether the Title VII "Indian tribe" exemption included within its definition an organization which was formed by several tribes. In this case, the issue is not that different. This Court must consider whether the Title VII "Indian tribe" exemption includes within its definition an organization, the Little Wound School Board, which was formed by one tribe, instead of several. It is the analysis behind the court's conclusion in *Dille* that is important. It is important to consider the purpose behind the enactment of the "Indian tribe" exemption. Senator Mundt's comments show that the purpose of this exemption was to promote the ability of sovereign Indian tribes to have control over their enterprises and organizations in an attempt to integrate their people into the affairs of the community.

[¶ 23] Plaintiffs argue that the fact that the Board is incorporated under the laws of South Dakota is a key factor.[8] This Court finds the reasoning by the South Dakota Supreme Court in *Sage v. Sicangu Oyate Ho, Inc.,* 473 N.W.2d 480 (S.D.1991) is helpful in reiterating this Court's conclusion that the fact that the Board is incorporated under South Dakota law is not relevant based upon the other facts in the case. Plaintiff in *Sage,* a non-Indian principal, brought a grievance against St. Francis Indian School ("St.Francis") on the Rosebud Indian Reservation because St. Francis failed to renew his contract after it expired. St. Francis was a nonprofit corporation incorporated under the laws of the state of South Dakota. In *Sage,* the issue was whether the trial court erred in dismissing the case for lack of subject matter jurisdiction. The trial court held that it did not have jurisdiction to proceed based upon infringement and federal preemption. The supreme court affirmed the trial court's decision on the issue of preemption, and therefore, it did not reach the infringement issue.

The issue which the supreme court addressed is whether the fact that school was not a individual Indian person nor an instrumentality of the tribal government but a nonprofit organization incorporated under the laws of South Dakota should affect its conclusion. The court noted, "In general, civil jurisdiction over disputes between reservation Indians lies exclusively in tribal court." *Id.* at 482. Therefore, if the school was not considered to be "Indian," the preemption analysis would not be necessary. Plaintiff Sage argued that the preemption analysis should not apply because the school "is no more an 'Indian' than Sage himself.".

[¶ 24] The court set forth three reasons for rejecting Sage's argument. The court stated:

First, all 332 students of school are reservation Indians. Membership in the corporation is limited to enrolled members of the Rosebud Sioux Tribe with children in the school and any others they may elect. Members of the corporation democratically elect the seven voting members of the school board according to the reservation district they live in, with the exception of one ex officio school board member chosen from the Rosebud Sioux Tribal Education Committee. All current school board members are enrolled members of the tribe. Although school was incorporated as a nonprofit organization under South Dakota law in 1970, it was also authorized by the Rosebud Sioux Tribal Council in 1975 to contract with the federal Bureau of Indian Affairs and was granted a tribal charter by the tribal council in 1982.

*Sage,* 473 N.W.2d at 483. The court's second reason for rejecting Sage's argument was because the school is a tribal organization under the ISDEAA. The third reason the court gave for rejecting Sage's argument was that even if the status of the school under federal law was ambiguous, the court stated

---

8.  Plaintiffs also cite to two decisions by the Equal Employment Opportunity Commission ("EEOC") which they urge support their conclusion that the Board is not an "Indian tribe" pursuant to Title VII. *See* EEOC Dec. P 6823, Dec. No. 80–14, 1980 WL 8882 (August 5, 1980 E.E.O.C.); EEOC Dec. P. 6847, Dec. No. 85–6, 1985 WL 32778 (April 2, 1985 E.E.O.C.). How-

ever, this Court agrees with the Board that the EEOC's decision in this case is more relevant than the decisions cited by plaintiffs. The EEOC's decision in this case concluded that the Board was an "Indian tribe" and dismissed the plaintiffs' charges. *See* Reply Exhibit 3, Attachments to Affidavit of Anne Hunter.

that " '[a]mbiguities in federal law have been construed generously in order to comport with ... traditional notions of sovereignty and with the federal policy of encouraging tribal independence[.]' " *Id.* at 484 (quoting *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 143–44, 100 S.Ct. 2578, 2584, 65 L.Ed.2d 665 (1980)).

[¶ 25] Although the court in *Sage* was not determining if the St. Francis school fit within the definition of the "Indian tribe" exemption under Title VII, the reasoning by the *Sage* court is helpful in reiterating this Court's conclusion that the fact that the Board is incorporated as a nonprofit corporation under South Dakota law does not affect its status as an "Indian tribe."

## V. CONCLUSION

[¶ 26] Based upon this Court's factual findings, this Court holds that as a matter of law the definition of an "Indian tribe" under Title VII and the ADA includes a school board which is established and controlled by individuals of the Tribe. This Court finds that to exclude such an organization supervised by the Tribe would severely limit the "Indian tribe" exemption of Title VII. This Court finds that Congress intended to include the Board within the definition of an "Indian tribe." The canons of construction require this Court to liberally interpret the definition contained in the statute and to resolve any doubts in favor of the Indians. Accordingly, this Court finds that the Board is an "Indian tribe" under Title VII and the ADA; therefore, this Court does not have the subject matter jurisdiction to proceed over the above entitled matter.

[¶ 27] Given the Court's conclusion on the first issue, it is not necessary for this Court to consider the Board's second issue—whether in light of 42 U.S.C. § 2000e–2(i) this Court would also not have jurisdiction to proceed.[9] Having eliminated the federal law claims from this case, this Court declines to exercise supplemental jurisdiction over the state law claims. *See Dille,* 610 F.Supp. at 159. This Court finds that these claims would be more appropriately resolved in either tribal or state court.[10] Accordingly, it is hereby

[¶ 28] ORDERED that summary judgment shall be entered in favor of defendant Little Wound School Board because this Court finds that as a matter of law this Court does not have subject matter jurisdiction to proceed under Title VII or the ADA.

9. After considering the record in this case, even if this Court were to conclude that the "Indian tribe" exemption to Title VII and the ADA did not apply, this Court would also likely find that 42 U.S.C. § 2000e–2(i) would prohibit the application of Title VII in this case. This Court agrees with the Board's argument set forth at footnote five in its brief in support of its motion for summary judgment. For 42 U.S.C. § 2000e–2(i) to be met the moving party must show that the Board is "a business or enterprise living on or near the reservation" and that the board has a publicly announced employment practice which gives preferential treatment to Indians living on or near a reservation. This Court notes for the record that given the liberal interpretation which the Court must apply to section 2000e–2(i), it is likely that the Board would be considered an "enterprise or business" under the statute. The parties do not dispute that the school is located

within the exterior boundaries of the Pine Ridge Indian Reservation. In addition, the record is clear that the Board had a publicly announced preferential employment practice, and plaintiffs have not presented any evidence which would dispute this genuine issue of material fact. *See* Affidavit of Fire Thunder at ¶ 5; Attachments to Affidavit of Fire Thunder, *Little Wound Policies and Procedure Manual* at § 3.04; Administrator Contract of Steven Giedosh, Attached as Exhibit to Defendant's Reply Brief for Summary Judgement; Application of Employment for George McGrath, Attached to Defendant's Reply Brief for Summary Judgment.

10. This Court's statement is not meant to imply that state court would be a proper forum. This Court does not need to resolve the issue of which forum, state or tribal, would be the proper forum for the alleged state law claims.