**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

KIM R. JIM,

      Plaintiff - Appellant,

v.

SHIPROCK ASSOCIATED
SCHOOLS, INC.,

      Defendant - Appellee.

No. 19-2100
(D.C. No. 1:17-CV-01114-RB-JFR)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **BACHARACH**, and **MORITZ**, Circuit Judges.
_____

Ms. Kim Jim sued her employer (Shiprock Associated Schools, Inc.)

for discrimination under Title VII, which contains an exception for Indian

tribes. 42 U.S.C. § 2000e(b).[1] But what is an Indian tribe? Sometimes the

existence of a tribe is obvious. But what about a private corporation

_____

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value if otherwise appropriate. Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

[1]    In district court, Ms. Jim also claimed a violation of the Americans with Disabilities Act, and the corporation addresses this claim in the appeal. But Ms. Jim hasn't appealed the ruling on this claim.

serving a tribe? The issue arises here because Ms. Jim's employer was a private corporation that served an Indian tribe (the Navajo Nation).

The district court granted summary judgment to the corporation, regarding it an Indian tribe under the exception in Title VII. Ms. Jim appeals, and we affirm.

**How we review the district court's ruling**

In reviewing the district court's characterization of the corporation as an Indian tribe, we engage in de novo review. *Ferroni v. Teamsters, Chauffers & Warehousemen Local No. 222*, 297 F.3d 1146, 1149 (10th Cir. 2002). In conducting this review, we focus on the context for Title VII's reference to an "Indian tribe." *See Dille v. Council of Energy Res. Tribes*, 801 F.2d 373, 376 (10th Cir. 1986) ("[T]he definition of an Indian tribe changes depending upon the purpose of the regulation or statutory provision under consideration."); *accord Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1133 (9th Cir. 2006) ("Whether an entity is a tribal entity depends on the context in which the question is addressed."). In the context of Title VII, we consider the statutory aim of allowing Indian tribes "to control their own economic enterprises." *Duke v. Absentee Shawnee Tribe of Oklahoma Hous. Auth.*, 199 F.3d 1123, 1125 (10th Cir. 1999) (quoting *Dille*, 801 F.2d at 375).

**The Navajo Nation's creation and control of the corporation**

In this context, we have not said how we'd decide whether to characterize a corporation as an Indian tribe. In analogous circumstances, however, courts elsewhere have considered an entity an "Indian tribe" under Title VII when a tribe created and controlled the enterprise. *See Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998) (Indian tribe supplied the directors and controlled the enterprise); *Thomas v. Choctaw Mgmt./Servs. Enter.*, 313 F.3d 910, 911 (5th Cir. 2002) (Indian tribe owned and operated the commercial enterprise).

The corporation here was created under the auspices of the Navajo Nation. For example, the Navajo Nation's statutes authorize chapters to establish local school boards. Navajo Nation Code Ann. tit. 10, § 201. Given this authority, the Navajo Nation's Board of Education empowered the corporation to operate educational programs. The corporation operates these educational programs under the Tribally Controlled Schools Act. 25 U.S.C. §§ 2501–11.

Given the educational purpose of the corporation, it acts through a local school board whose members are elected under the Navajo Nation Election Code. Navajo Nation Code Ann. tit. 10, § 201. Under the Code, every board member must be enrolled in the Navajo Nation. *See id.*; Navajo Nation Code Ann. tit. 11, § 8(D)(4)(b).

The Navajo Nation supplies not only the board members, but also most of the students and employees. (Enrollees in Indian tribes comprise over 98% of the students and roughly 80% of the school employees.)

Despite the heavy involvement of tribal members, Ms. Jim observes that (1) some students and employees are not members of an Indian tribe and (2) the corporation was formed under state law. But these observations do little to diminish the role of the Navajo Nation.

Though roughly 80% of the employees are tribal members, Ms. Jim contends that all of the employees are considered federal employees for purposes of the Federal Tort Claims Act. But characterization as an Indian tribe turns on context (*see* p. 2, above), and the issue here involves the tribe's creation and control of an enterprise rather than tort liability. So an employee's status as a federal employee under the Federal Tort Claims Act does not affect characterization of the corporation as an Indian tribe.

Ms. Jim not only likens the corporation to a federal entity but also points out that the entity was created as a non-profit corporation under state law rather than tribal law. But the corporation also obtained authority to conduct business under the Navajo Corporation Code.

We addressed a similar issue in *Duke v. Absentee Shawnee Tribe of Oklahoma Housing Authority*, 199 F.3d 1123 (10th Cir. 1999). There we concluded that an Indian housing authority could be characterized as an

4

"Indian tribe" under Title VII even though the entity had been created under state law. *Duke*, 199 F.3d at 1124–25.[2]

The corporation not only bears the characteristics of an Indian tribe but also operates under tribal oversight. For example, the corporation operates the school board, which is accountable to the Navajo Nation for educational performance. Navajo Nation Code Ann. tit. 10, § 200(B). Given the Navajo Nation's oversight, "[i]t is . . . obvious" that the schools "have been inextricably intertwined with the Navajo Nation government and their local Navajo communities from their inception." *Rough Rock Community School v. Navajo Nation*, No. SC-CV-06-94, at 71–72 (Nav. Nat. Sup. Ct. 1995).

Ms. Jim downplays the Navajo Nation's oversight, pointing to two proposals. The first proposal apparently remains under consideration; the second proposal was nixed.

The current proposal would allow the Navajo Nation to authorize operation of the schools for ten years (rather than only for one year at a time). But the proposal would still require compliance with the Navajo

---

[2] We've held that a private corporation does not share a tribe's sovereign immunity when the corporation was formed under state law. *Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1149–50 (10th Cir. 2012). This holding does not apply for two reasons. First, our issue involves interpretation of Title VII, not the scope of a tribe's sovereign immunity. Second, the corporation was formed not only under state law but also under Navajo law.

5

Nation's requirements. For example, the schools would remain obligated to submit quarterly and annual reports to the Navajo Nation, satisfy the Navajo Nation's academic standards, and comply with the Navajo Nation's election laws. Failure to comply with these requirements could force the corporation to relinquish control of the schools to the Navajo Nation.

Ms. Jim relies not only on this proposal but also on a previous proposal to remove the Navajo Nation from the funding process. That proposal would have affected the distribution channels for federal funds.

Funding from the Board of Indian Education has gone to the Navajo Nation, which then distributes funds to the corporation. Ms. Jim insists that the corporation had considered removing the Navajo Nation as the "middle-man." But even if this proposal were adopted, it wouldn't affect the Navajo Nation's oversight; the proposed change would simply eliminate the Navajo Nation's administrative role in distributing the federal funds.

In addition to these proposals, Ms. Jim argues that the corporation once refused to provide the Navajo Nation with requested information. For this argument, Ms. Jim relies only on an excerpt from the corporate minutes, which reflects disapproval of a request for the corporation's report of school board expenditures. A single failure to provide requested information does not diminish the Navajo Nation's authority to oversee the corporation's activities.

6

Despite the Navajo Nation's oversight, Ms. Jim argues that the corporation is controlled by the federal government. This control, according to Ms. Jim, arises because the corporation operates the schools with federal and state funding. For example, the corporation receives much of its funding from the U.S. Bureau of Indian Education, and these funds come with restrictions. Those restrictions allegedly trigger control by the federal government rather than the Navajo Nation. We disagree.

Though the financial benefits came with restrictions, the corporation received federal funding only because the schools were considered "tribally controlled." 25 U.S.C. § 2502(a)(1)(B). And a school is considered "tribally controlled" only if it is "operated by an Indian tribe or a tribal organization." 25 U.S.C. § 2511(9).

Though the school is tribally controlled, Ms. Jim argues that the federal government controls the curriculum. For this argument, Ms. Jim relies on a federal regulation (25 C.F.R. § 36.24), which applies only to schools operated by the Bureau of Indian Affairs or other contract schools that had agreed to adopt the federal regulations on the curriculum. 25 C.F.R. §§ 36.1, 36.2. But Ms. Jim does not present any evidence of an agreement requiring compliance with the federal regulations.[3] In the

---

[3] In her appeal briefs, Ms. Jim also relies on federal regulations addressing employee grievances (25 C.F.R. part 38). In oral argument, however, Ms. Jim concedes that these regulations do not apply.

absence of such an agreement, the Bureau's funding does not trigger any of the regulatory requirements. 25 U.S.C. § 2503(b)(1)(B).

* * *

On de novo review, we conclude that the corporation constitutes an "Indian tribe" under Title VII. The corporation serves the Navajo community, obtains its governing board from the Navajo Nation, follows Navajo law, oversees schools populated by Navajo students and staffed by Navajo members, and receives federal funding because of the corporation's service to the Navajo community. In these circumstances, the district court properly applied the exception for an "Indian tribe." So we affirm the dismissal.

Entered for the Court


Robert E. Bacharach
Circuit Judge