Karen C. CHARLAND, Plaintiff,

v.

LITTLE SIX, INC., d/b/a Mystic Lake Casino; Mdewakanton Sioux Community, sued as Shakopee Mdewakanton Sioux Community, Defendants.

No. Civ.98–1708(DSD/JMM).

United States District Court,
D. Minnesota.

Aug. 31, 2000.

Craig D. Greenberg, Huffman, Usem, Saboe & Crawford, Minneapolis, MN, Richard G. Hunegs, Hunegs, Stone, Koenig & LeNeave, Minneapolis, MN, for Plaintiff.

Steven F. Olson, Janet Erickson, Blue-Dog, Olson & Small, Bloomington, MN, for Defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on plaintiff's objections to the report and recommendation of Magistrate Judge John M. Mason dated July 21, 2000 In his report, the magistrate judge recommended that defendant's motions for Rule 11 sanctions be granted, and that counsel for plaintiff be ordered to pay to defendants the sum of $19,173.17. Plaintiff strenuously objects to the magistrate judge's conclusions. However, the court fully agrees both with the magistrate judge's analysis of the Rule 11 issues and the fact that a sanction should be imposed. An attorney's decision to engage in frivolous litigation has consequences, among which is a sanction under Rule 11.

The court is mindful of the fact that the amount of the sanction is meant to deter future actions, both on the part of the sanctioned attorney and others, and is not meant to compensate the moving party. In this case, it is especially clear that the sanction should not be more severe than necessary to accomplish deterrence in light of the financial resources of plaintiff's counsel. Therefore, the sanction will be reduced to $5,000.

After conducting a de novo review of the file and record herein, **IT IS HEREBY ORDERED** that:

1. Defendant's motions for Rule 11 sanctions (Dkt.Nos.10, 32) are granted.

2. Counsel for plaintiff shall pay to defendants the sum of $5,000.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

*REPORT AND RECOMMENDATION*

MASON, United States Magistrate Judge.

The above matter came on for hearing before the undersigned on June 5, 2000 upon Defendants' Motions for Rule 11 Sanctions [Docket Nos. 10, 32]. Richard G. Hunegs, Esq. and Craig D. Greenberg, Esq. appeared on behalf of Plaintiff; Steven F. Olson, Esq. appeared on behalf of Defendants.

The matter is before the undersigned for a Report and Recommendation to District Judge David S. Doty, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B). Upon the following Findings of Fact/Report, it is recommended that Defendants' Motions for Rule 11 Sanctions [Docket Nos. 10, 32] be granted.

**FINDINGS OF FACT/REPORT**

**I. PROCEDURAL HISTORY**

We take the procedural history of this matter from our initial Report and Recommendation, dated January 21, 1999:

The Complaint alleges that "Defendants Little Six, Inc. (hereinafter "LSI") and Shakopee Mdewakanton Sioux Community [1] (collectively referred to herein as the "Casino") operate Mystic Lake Casino and Little Six Casino located in Scott County, in the city of Prior Lake Minnesota." The Complaint contains six Counts, and makes allegations concerning basically three events in the life of Plaintiff, which the Complaint attributes to "the Casino" or "Defendants" without differentiation between Defendants.

Each succeeding Count in the Complaint purports to incorporate by reference all of the preceding allegations.

Count One of the Complaint seeks to state a claim in negligence. It alleges that on June 2, 1996, Plaintiff was assaulted with a firearm while sitting in a parking lot of Mystic Lake Casino while waiting to pick up her husband, that Defendants were negligent, and that as a result of that negligence, Plaintiffs suffered severe physical and emotional damage.

Count Two alleges that on December 16, 1997, Plaintiff was announced as a prize winner of a trip for two to the Bahamas, plus $1,000 cash, but that on December 18, 1997, Defendant Little Six, Inc. sent her a letter stating that she was ineligible. Plaintiff alleges that this is a breach of contract.

Plaintiff's employment with "the Casino" was terminated on January 20, 1998. Count Three of the Complaint alleges that Plaintiff was fired, and her prize was withheld, in violation of the Minnesota "Whistleblower" act, Minn.Stat. § 151.931, et seq.; Count Four alleges that Plaintiff was fired based on her disabilities, in violation of Minn.Stat. § 363.03;

Count Five alleges that Plaintiff was fired in violation of the Americans with Disabilities Act; and Count Six alleges that she was fired in violation of Title VII of the Civil Rights Act of 1964.

The Complaint does not separately allege the jurisdictional basis for any of the six Counts in the Complaint. The allegations of jurisdiction are contained only in Paragraph 1, which refers to the disputes between the parties as if they were in the singular. Paragraph I states: "The Federal Courts have jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(2) and 28 U.S.C. § 1331 and 28 U.S.C. § 1343."

---

1. The caption of the Complaint erroneously refers to this Defendant as "Shakspere" Mde-

wakanton Sioux Community, but the mistake is not repeated elsewhere.

On September 15, 1998, both Defendants filed a Motion to Dismiss [Docket No. 4], alleging that the Court did not have subject matter jurisdiction over Plaintiff's Complaint. On January 21, 1999, this Court issued a Report and Recommendation that the District Court dismiss Plaintiff's Complaint for want of subject matter jurisdiction [Docket No. 23]. We determined that there was no federal jurisdiction over any of the Counts in the Complaint.

On February 5, 1999, Plaintiff filed an Objection to the Report and Recommendation [Docket No. 24], claiming that jurisdiction was present pursuant to 28 U.S.C. § 1331, and that Plaintiff had challenged the application of the "Indian Tribe exception" under Title VII and the ADA as it extended to business corporations. Plaintiff also argued that jurisdiction was present under 28 U.S.C. § 1343. Finally, Plaintiff argued that the language used in *Kiowa Tribe of Oklahoma v. Manufacturing Technologies*, 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998) indicated that the Supreme Court was signaling a potential change in the law.

The District Court overruled the objections and adopted the Report and Recommendation. It dismissed the Complaint in an Order issued on March 1, 1999 [Docket No. 25]. The Eighth Circuit Court of Appeals affirmed the District Court decision on November 26, 1999 [Docket No. 30].

On September 30, 1998, Defendants had filed a Motion for Rule 11 Sanctions [Docket No. 10]. Ruling on that Motion was deferred pending the final decision of the District Court on the substantive Motion. The Motion was then renewed on February 1, 2000 [Docket No. 32]. The parties were afforded an opportunity for supplemental briefing and oral argument, and the Motion for Sanctions was then submitted.

## II. DISCUSSION

Federal Rule of Civil Procedure 11 provides in relevant part:

(b) **Representations to Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

. . .

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

 The rule requires that all litigation papers be signed, certifying that the signer has made a reasonable inquiry into the facts and law and concluded that there are grounds to support the submitted document. *See Bergeron v. Northwest Publications Inc.*, 165 F.R.D. 518, 521 (D.Minn. 1996). The court must determine whether the party's conduct was objectively reasonable at the time the paper in question was signed. *See Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469–70 (2d Cir.1988), *cert. granted*, 489 U.S. 1009, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989). Arguments for the extension, modification, or reversal of existing law do not violate Rule 11 if they are not frivolous under an objective standard. *See* Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amend-

ments) (Objective standard intended to eliminate any "empty-head, pure-heart justification for patently frivolous arguments").

## A. Defendants Have Complied with Procedural Requirements of Rule 11

Federal Rule of Civil Procedure 11(c)(1) governs the procedure concerning the imposition of Rule 11 sanctions. It provides in relevant part:

(1) How Initiated

(A) By Motion. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.

Under the Rule, "a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refused to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation." Fed.R.Civ.P. 11 Advisory Committee Notes (1993 Amendments). This period of 21 days has been described as a "safe harbor." The requirement of a Notice of the alleged improper conduct enables the offending party to know what conduct is the source of the dispute, and to know precisely what action is required to cure the offense. This "safe harbor" is intended to allow a party a period of time in which to withdraw or correct the allegedly deficient paper without the imposition of sanctions. Defendants served Plaintiff a copy of its Motion for Rule 11 Sanctions on September 8, 1998. The Complaint was not withdrawn, triggering the filing of the Motion with the Clerk of Court on September 30, 1998, allowing more than 21 days to pass prior to filing, as required by Rule 11.

## B. Counsel for Plaintiff Violated Rule 11

Rule 11(b)(2) requires that a claim be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Rule 11 is violated when a party invokes the jurisdiction of the federal courts without justification. *See Brignoli v. Balch, Hardy & Scheinman, Inc.*, 126 F.R.D. 462, 464 (S.D.N.Y.1989) ("Improperly invoking the subject matter jurisdiction of a federal district court is sanctionable under Rule 11"). Plaintiff alleged that there was jurisdiction over both defendants by reason of the provisions of 28 U.S.C. § 1331, 28 U.S.C. § 1332 and 28 U.S.C. § 1343; in fact, federal courts do not have jurisdiction over either Defendant under any of these laws, or any other law.

Plaintiff's lawsuit combined into a single Complaint three separate unrelated claims against Defendants Little Six Inc. and Mdewakanton Sioux Community. Count One was based on common law negligence, and Count Two of the Complaint was based in common law breach of contract. In Counts Three through Six of the Complaint, Plaintiff alleged various counts of employment discrimination. Counts Three and Four were based in Minnesota statutory law, while Five and Six were based upon federal statutes.

Plaintiff's Complaint was dismissed with prejudice because Plaintiff failed to properly plead jurisdiction, and because existing law offered no grounds for such allegations. Counsel for Plaintiffs violated Rule 11 of the Federal Rules of Civil Procedure when it alleged that there was jurisdiction over either of the defendants. In fact, none of the allegations of jurisdiction over defendant Shakopee Mdewakanton Sioux Community were warranted by existing law or by a nonfrivolous argument for the

extension, modification, or reversal of existing law or the establishment of new law. As to Defendant Little Six, Inc., the allegations in Counts One and Two were neither warranted by existing law nor by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. (The allegations in Counts Three through Six against Little Six, Inc. were not warranted by existing law, but could have been supported by a nonfrivolous argument for a change in the law.)

### 1. Failure to Plead Jurisdiction

■ The Complaint was dismissed because it did not properly allege jurisdiction. It contained allegations as to three separate and unrelated transactions or occurrences, but the allegations of jurisdiction were only made in Paragraph 1, which stated: "The Federal Courts have jurisdiction over this dispute [sic] pursuant to 28 U.S.C. § 1332(a)(2) and 28 U.S.C. § 1331 and 28 U.S.C. § 1343." This violated the requirements of Rule 8(a)(1) of the Federal Rules of Civil Procedure. *See Guilbeaux v. University of Texas Medical Branch*, 42 F.Supp.2d 637, 641 (E.D.Tex. 1998), *citing Fountain v. New Orleans Public Service, Inc.*, 265 F.Supp. 630, 632 (E.D.La.1967) ("Pleading of federal jurisdiction requires more than a simple allegation that jurisdiction exists or citation of a federal statute.... It requires that the Complaint clearly set forth the basic facts necessary to support the conclusion that federal jurisdiction does in fact exist"). *See also* Rule 10(b), requiring separate Counts for each separate transaction or occurrence.

### 2. Failure to Substantiate Jurisdiction

The Complaint was also dismissed because Plaintiff was unable to suggest any basis upon which the Court could exercise jurisdiction over either Defendant as to any of the Counts in the Complaint. It facilitates consideration of the issues by considering the Counts in the Complaint separately.

### a. No Jurisdiction Over Negligence Claim

In Count One, Plaintiff sought to impose liability upon both Defendants as "the owners and operators of a business and an adjacent parking facility" for their violation of their "duty to make reasonable efforts to provide a safe and secure parking facility for employees and patrons." The only potential basis for federal jurisdiction would be diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).

■ Plaintiff is a resident of Minnesota. To support diversity jurisdiction, Plaintiff would be required to allege and prove that both of the Defendants are citizens of a different state, or citizens or subjects of a foreign state. *Joiner v. Diamond M Drilling Co.*, 677 F.2d 1035, 1039 (5th Cir. 1982). *See also Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) ("Diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each Plaintiff"); *Yeldell v. Tutt*, 913 F.2d 533, 537 (8th Cir.1990).

Plaintiff did not make allegations concerning the citizenship of each Defendant. This in itself is a basis upon which Rule 11 sanctions should be imposed. *Walker by Walker v. Norwest Corporation*, 108 F.3d 158, 162 (8th Cir.1997) ("The fact that [Plaintiffs] did not allege the citizenship of the defendants convinces us that the district court did not abuse its discretion in determining that Rule 11 sanctions were appropriate.").

■ The fact that no allegations of diversity could *properly* have been made provides additional grounds for sanctions. The Court of Appeals for the Eighth Circuit has expressly held that courts lack diversity jurisdiction over an Indian tribe. *See Standing Rock Sioux Indian Tribe v. Dorgan*, 505 F.2d 1135, 1140 (8th Cir.1974) (An Indian tribe "is not a citizen of any

state and cannot sue or be sued in federal court under diversity jurisdiction"). Count One could not be maintained against Defendant Shakopee Mdewakanton Sioux Community.

Plaintiff urged that Little Six, Inc. should be treated differently from the Community for purposes of considering diversity allegations. We have not been made aware of any cases which so hold, but acknowledge that it is possible that a Court may someday reach this conclusion. This would not save Plaintiff in this case, however. Here, even if we were to accept this view, as well as Plaintiff's argument that LSI is a "foreign corporation" because it was once registered as such, Plaintiff neither alleged nor substantiated that Little Six Inc. is not a citizen of the State of Minnesota.

Under 28 U.S.C. § 1332(c)(1) "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business...." Plaintiff offered no basis upon which the Court could conclude that the principal place of business of Defendant Little Six, Inc. is a State other than the State of Minnesota. Plaintiff's Complaint does not contain allegations as to the alleged state of incorporation of Little Six, Inc., nor does it allege that LSI's principal place of business of business is in a State other than Minnesota. "In order to adequately establish diversity jurisdiction, a Complaint must set forth with specificity a corporate party's state of incorporation and its principal place of business. Where a plaintiff fails to state the place of incorporation or the principal place of business of a corporate party, the pleadings are inadequate to establish diversity." *Joiner*, 677 F.2d at 1039; quoted with approval in *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir.1987).

Plaintiff did not offer legal argument in support of diversity jurisdiction. Instead, Plaintiff offered arguments based upon is-

sues relating to whether Casinos should be entitled to immunity; whether diversity jurisdiction could be exercised where state courts did not have jurisdiction; and whether the tribal sovereign immunity doctrine should be abrogated. Whether the law of immunity is emerging as Plaintiff claims misses the point of the dispute. Even if Casinos were not immune from suit, and if the tribal sovereign immunity doctrine were abrogated completely, there would not be diversity jurisdiction over the negligence claim asserted in Count One of this Complaint, for the reasons we have stated.

The claim of diversity jurisdiction over either Defendant is contradicted by existing law, and is not warranted by a nonfrivolous argument seeking to change that law. The assertion of jurisdiction as to Count One of the Complaint violated Rule 11 of the Federal Rules of Civil Procedure.

### b. No Breach of Contract Jurisdiction

Count Two of the Complaint alleged that Plaintiff had a contract with Defendants under which she was entitled to $1,000 cash and a trip for two to the Bahamas. She alleged that Defendants breached that contract, and seeks to recover as damages the prize amount. The allegations in Count Two suffer from the same jurisdictional infirmities as those relating to negligence in Count One. In addition, these allegations did not come close to satisfying the $75,000 jurisdictional amount. The assertion of jurisdiction over Count Two also warrants the imposition of sanctions pursuant to Rule 11.[2]

### c. Employment Discrimination

Counts Three and Four of Plaintiff's Complaint asserted claims for employment discrimination based upon Minnesota Statutes. These claims were not based upon a federal question, and also failed to plead the minimum jurisdictional amount re-

2. We also are unable to ascertain a basis upon which it could be claimed that both the

Community and LSI had a contract with Plaintiff.

quired for diversity jurisdiction. *See, e.g. Hatridge v. Aetna Cas. & Sur. Co.,* 415 F.2d 809, 814 (8th Cir.1969); *St. Paul Mercury Indemnity Co. v. Red Cab. Co.,* 303 U.S. 283, 288–90, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Accordingly, jurisdiction over these Counts could not be sustained unless supplemental jurisdiction were established under 28 U.S.C. § 1367. § 1367(a) provides in relevant part:

> "... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

The Court did not have supplemental jurisdiction over Counts Three and Four for two reasons. First, Plaintiff's Complaint did not contain allegations invoking jurisdiction under that statute. Second, there must be an underlying claim over which the Court does have original jurisdiction before supplemental jurisdiction may be found. There was not such a claim in the Complaint.

Counts Five and Six alleged that Plaintiff's termination violated the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Plaintiff argued that there was federal question jurisdiction over these Counts, under 28 U.S.C. § 1331. Plaintiff also relied upon 28 U.S.C. § 1343 for jurisdiction over these Counts.

### (1) *No Federal Question Jurisdiction (28 U.S.C. § 1331)*

■ The statutes upon which Plaintiff relied forbid discrimination by "employers." Both statutes expressly provide that "an Indian tribe" is not an employer. Title VII, 42 U.S.C. § 2000e(b); ADA, 42 U.S.C. § 12111(5)(B)(i). Plaintiff offered no suggestion of any basis upon which jurisdiction would exist as to a claim

against Defendant Mdewakanton Sioux Community, an Indian Tribe.

Plaintiff now suggest that the phrase "Indian tribe" in the statutes should not be construed in such a way as to include Indian Casinos as those which are excluded from the statutory definition of employer. This argument has not been accepted when it has been presented to other courts. *See Giedosh v. Little Wound School Board. Inc.,* 995 F.Supp. 1052, 1055–56 (D.S.D.1997); *Setchell v. Little Six, Inc.,* No. C4–95–2208, 1996 WL 162560, at *2 (Minn.App. Apr.9, 1996), *review granted* (Minn. July 10, 1996), petition for writ of cert. to the Supreme Court of Minnesota denied, 521 U.S. 1124, 117 S.Ct. 2520, 138 L.Ed.2d 1021 (1997); *see also Wardle v. Ute Indian Tribe,* 623 F.2d 670, 672 (10th Cir.1980) ("Indian tribes and businesses operating on or near Indian reservations are excluded from the employment prohibitions of Title VII").

Plaintiff claims that she was making a nonfrivolous argument for the extension, modification or reversal of existing law, relying on cases such as *Kiowa,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998); *Puyallup Tribe, Inc. v. Department of Game of the State of Washington,* 433 U.S. 165, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) (Blackmun, J. concurring); *Oklahoma Tax Comm'n v. Potawatomi Indian Tribe,* 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991) (Stevens, J. concurring); and the dissenting opinion in *Cohen v. Little Six, Inc.,* 543 N.W.2d 376 (Minn. App.1996).

■ Plaintiff contends that the Little Six, Inc. would meet the definition of "employer" under Title VII and the ADA, were it not for the proviso that states that "an Indian Tribe" is not an employer. Plaintiff wishes to persuade that the phrase "an Indian tribe" should not be construed in such a way as to include the commercial casino Little Six, Inc. Plaintiff could contend that a holding to the contrary would allow commercial enterprises

to have protections that were not intended by Congress, at the expense of tort victims such as herself who are not provided a full opportunity to pursue legal claims against the enterprise.

Such contentions, if they were developed in support of Counts Five and Six, would represent nonfrivolous argument seeking a modification to existing law as it pertains to the claims against Little Six, Inc. under Title VII and the ADA. It is true that in this case, counsel for Plaintiffs did not effectively develop this argument, but we do not read Rule 11 as imposing a requirement in every case that the nonfrivolous argument for a change in existing law be made in a particular manner. (*But see* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure*, § 1335, p. 71–81, in which the authors examine the question of "whether Rule 11 is violated when an attorney presents an argument for the extension of existing law in a manner that creates the impression that it is based on settled law").

(2) *No Jurisdiction Pursuant to 28 U.S.C. § 1343*

 Plaintiff also relied on 28 U.S.C. § 1343 as a basis for jurisdiction over the claims under the ADA and Title VII, alleging that these claims "fit squarely within the jurisdictional provisions of 28 U.S.C. § 1343(a)(3) and 28 U.S.C. § 1343(a)(4)." These provisions are set forth below:

> The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> . . .
>
> (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
>
> (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

Plaintiff argued that any argument that federal law does not apply to Defendants raises questions concerning due process and equal protection, implicating the United States Constitution, and that applying tribal sovereign immunity to commercial business entities creates an invalid "racial preference" violating due process. Plaintiff also argued that applying the Indian tribe exemption to the ADA and Title VII to the Casino would also violate her equal protection, as these statutes were developed to establish a human rights framework for all United States citizens, and to extend the exemption would be to take these rights from her.

Plaintiff failed to legally support this argument when making it in her Memorandum in Opposition to Defendants' Motion to Dismiss, and this Court has also been unable to find legal support for it. Also preventing jurisdiction under § 1343 is Plaintiff's failure to allege and prove a deprivation of civil rights under the color of state law. The Complaint does not allege any violation of her rights under color of state law. To the extent that Plaintiff's allegations constitute deprivations of rights under color of tribal law, 28 U.S.C. § 1343(a)(3) would not provide jurisdiction. *See R.J. Williams Co. v. Fort Belknap Housing Authority*, 719 F.2d 979, 982 (9th Cir.1983) ("no action under 42 U.S.C. § 1983 can be maintained in federal court for persons alleging deprivation of constitutional rights under color of tribal law").

## C. Appropriate Sanctions

The only issue remaining is the imposition of the sanction itself. Federal Rule of Civil Procedure 11(c)(2) governs the "Nature of Sanction," providing:

> "A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or

comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."

> (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
>
> . . .

"Deterrence, compensation and punishment are all important factors considered by the federal courts in determining Rule 11 sanctions." *Bergeron v. Northwest Publications Inc.*, 165 F.R.D. 518, 521 (D.Minn.1996); *see also Eastway Constr. Corp. v. City of New York*, 637 F.Supp. 558, 570 (E.D.N.Y.1986), modified, 821 F.2d 121 (2d Cir:), cert. denied, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987) (Eastway II) ("Sanctions are imposed against the client purely for their deterrent effect. But sanctions are imposed against the attorney also for disciplinary purposes, as a punishment for dereliction of duty by an officer of the court who should know better"). "Deterring frivolous litigation is an important goal; it is valued highly by the judiciary and by the attorneys practicing before it." *Lawyers' Responsibilities to the Courts: The 1993 Amendments to Federal Rule of Civil Procedure 11*, 107 Harv.L.Rev. 1629, 1650 (1994).

At oral argument, counsel for Plaintiff sought to avoid the imposition of sanctions upon the ground that the goal of seeking to change the law was laudatory. We are mindful of the caution expressed in the Advisory Committee Notes to the 1983 Amendments to Rule 11: "The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted." Cases in which parties advance plausible theories on the basis of which the Court might change existing law do not warrant sanctions. We have refrained from imposing sanctions in this case as to the assertion of Counts Five and Six upon the basis that such arguments *could* have been asserted. But sanctions are required where the position of the party is not warranted by existing law nor by nonfrivolous arguments for a change in the law. *See Hatteras of Lauderdale, Inc. v. Gemini Lady*, 853 F.2d 848, 851 (11th Cir.1988).

Defendants request $54,780.50 in attorneys' fees, based on 265.4 hours of attorney time, and total expenses of $1,352.81, for a total sum of $56,133.31. (Aff. of Steven F. Olson in Support of Rule 11 Sanctions, Exh. C. [Docket No. 35]). Defendants' request does not detail the amount of time spent on each issue or the tasks associated with each or any issue, nor state the reasonable hourly rate and number of hours of any person working on the case. It provides the number of hours worked and the total fees for each month from July 1998 to January 2000. This type of "generalized billing" makes it difficult to review the fee application and determine what it was Defendants devoted time to, and whether these amounts of time were reasonable. *Miller v. Woodharbor Molding & Millworks, Inc.*, 174 F.3d 948, 949 (8th Cir.1999). In these situations, "the district court should request a more detailed billing before awarding attorney's fees or should consider a percentage reduction for inadequate documentation." *Miller*, 174 F.3d at 950, *citing Hensley v. Eckerhart*, 461 U.S. 424, 436–37, n. 12, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir.1991).

We recommend a percentage reduction because of the lack of completely detailed billing records. We also recommend that

the District Court reduce the award for another reason. All of the allegations against Defendant Shakopee Mdewakanton Sioux Community were wholly without jurisdictional support, as were the allegations in Counts One and Two against Little Six, Inc. However, we have found that the allegations against Little Six, Inc. in Counts Five and Six could have been supported by a nonfrivolous argument for the extension, modification, or reversal of existing law. Thus, some of the attorneys fees are not attributable to the violation of Rule 11.

At the same time, however, it is important for the Court to keep in mind the reasons that substantial attorneys fees were incurred in this matter. Counsel for Plaintiff improperly persisted in asserting jurisdiction when none could be established, and no reasonable grounds existed for asserting jurisdiction. Counsel for Plaintiff complicated the consideration of the Motion by confusing issues of immunity with issues as to jurisdiction. The result was that Defendants were required to incur attorneys fees in a sum greater than would otherwise would have resulted. The Advisory Committee Notes to the 1993 Amendments state that Rule 11 "emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting on a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention." *See Meadow Limited Partnership v. Heritage Savings & Loan Assoc.*, 118 F.R.D. 432, 434 (E.D.Va.1987) (The duty under Rule 11 "is a continuing duty and counsel cannot ignore the realities of life once facts come to their attention which indicate that their earlier reliance was misplaced").

We recommend that the District Court require counsel for Plaintiff to pay to Defendants the total sum of $19,173.17 as a monetary sanction for the violations of Rule 11. This represents thirty-five percent of the total of $54,780.50 requested in legal fees. We also have concluded that expenses cannot be awarded. These conclusions are based in part on the factors recited above. In addition, it is not intended that for every violation of Rule 11, the opposing party shall recover the full attorneys fees and expenses occasioned by that violation. As the Court of Appeals for the Eighth Circuit has noted: "[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending.". *Kirk Capital Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994).

The considerable monetary sanction will serve to partially compensate Defendants for the time and money spent in addressing arguments that they should not have been forced to defend. It will also act as a deterrent as well as punishment for this particular conduct. Not to be overlooked is the fact of this Opinion itself as a non-monetary sanction which also acts as a deterrent and punishment.

The imposition of sanctions should be upon counsel for Plaintiff, and not upon Plaintiff herself. Federal Rule of Civil Procedure 11(c)(2)(A) dictates that "monetary sanctions may not be awarded against a represented party for a violation of 11(b)(2)." This is the proper result in this case, as counsel for Plaintiff was (or should have been) aware that the claims made were unwarranted in existing law, through both prior experience and a reasonable inquiry. It was counsel who continued to pursue the claims, while Plaintiff only relied on the expertise of her attorney.

### RECOMMENDATION

For the reasons set forth above, it is recommended that Defendants' Motions for Rule 11 Sanctions [Docket Nos. 10, 32] be granted, and that counsel for Plaintiff be order to pay to Defendants the sum of $19,173.17.

July 21, 2000.